### Percival Steele v. John C. Schaffer et al.

1.   FOREIGN CORPORATIONS—*Insufficient Service of.*—Delivery to the secretary of a foreign corporation of a copy of notice and of the bill of complaint by a sheriff of the foreign state of which such corporation is resident is not a legal service of such corporation.

2.   PROCESS—*Service upon a Foreign Defendant— What is Not Sufficient.*—A return by a sheriff that he served a foreign defendant by delivering to him a copy of notice and of the bill of complaint is not such service as is authorized by section 14 of the chancery act.

Steele v. Schaffer.

3. PARTNERSHIP—*Bill for Accounting of Profits of One Partner Should Not Make Others Parties.*—If a partner has agreed to share his profits with a stranger, and the latter seeks an account of those profits, he should bring his action against that one partner alone, and not make the others parties.

**Bill for an Accounting.**—Appeal from the Superior Court of Cook County; the Hon. OLIVER H. HORTON, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed March 30, 1903.

Appellant was complainant and appellees were defendants in the Superior Court. The bill was filed by complainant against John C. Schaffer, Samuel R. Hughes, Adolph Rose, ———— Porter, D. E. Town, B. F. Griffith, Murray F. Smith, the Vicksburg Railroad Power and Manufacturing Company, and F. S. Mordaunt. Schaffer, Town and Mordaunt appeared and answered the bill. The sheriff of Warren county made a return that he served Hughes, Griffith and the Vicksburg, etc., company with notice and copies of the bill, but these parties did not appear or answer. Smith was not served, nor did he appear. The cause was heard by the chancellor on the testimony of witnesses and documents produced in open court, and the court dismissed the bill for want of equity against all the defendants except Mordaunt, from which decree the complainant appealed.

The facts averred in the bill are substantially as follows: January 3, 1898, complainant, Mordaunt and Schaffer, agreed to co-operate in the procurement of street railway franchises in the city of Vicksburg and the village of Speed's addition, in Warren county, Mississippi, and to co-operate in the purchase or construction and operation of an electric power and light plant. Mordaunt agreed to assist complainant in procuring the franchises, and Schaffer agreed to defray one-half of the necessary expenses and do all in his power to effect a sale of the stocks and bonds of a corporation to be organized by the parties. Complainant, January 15, 1898, and at other times, worked in furtherance of the undertaking, and February 1, 1898, complainant and Mordaunt obtained, in complainant's name, the desired franchises. February 15, 1898, Mordaunt and Schaf-

fer agreed that Schaffer was to receive seventy-five per cent of the profits which might be made by the parties to the agreement of January 3, 1898, from the construction or operation of the street railway and the electric power and light plant, including seventy-five per cent of stock of the proposed corporation not used in the construction, purchase or procurement of the railway or electric light plant, issued to them or for their use, and that Mordaunt was to receive the remaining twenty-five per cent, and further agreed that from said twenty-five per cent Mordaunt was to compensate his associates, of whom complainant was one, for their services.

July 15, 1898, Schaffer, without notice to complainant, purchased, in New York City, an electric light plant situated in Vicksburg, and claimed that he paid for it $46,000, inclusive of $2,000 paid to a broker as commission; whereas he paid therefor only $16,000.

August 15, 1898, Mike J. Mulvihill and Murray F. Smith, both of Vicksburg, with Schaffer's knowledge and approval, proposed to complainant that he should assign the said franchise to Smith, and that, in consideration of such assignment, one-quarter of the profits to be received by Mordaunt should be paid to complainant, and Mordaunt agreed to the said proposal, and complainant accepted the same and assigned said franchise to said Smith. The last mentioned agreement was made by Schaffer's authority and in his behalf.

May 26, 1898, the Vicksburg Railroad, Power and Manufacturing Company was organized, and, to purchase said electric light plants and construct said railway, said corporation issued stocks and bonds to a large amount, the amount being unknown to complainant. August 16, 1898, said Smith transferred to said corporation the franchise above mentioned, and Schaffer transferred to said corporation the electric light plant, and the corporation agreed to issue to Schaffer $300,000 of its capital stock and $100,000 in mortgage bonds. Said corporation sold to Schaffer $100,000 in mortgage bonds, which were of the value of

.$100,000, for $90,000, and Schaffer derived a profit therefrom of at least, to wit, $15,000, to one-fourth of twenty-five per cent of which last mentioned sum complainant is entitled.

September 1, 1898, the street railway was constructed and was operated by said corporation. Schaffer is the president, Samuel R. Hughes the vice-president, B. W. Griffith the treasurer, and Adolph Rose, —— Porter and D. E. Town are the directors of the corporation. Ninety thousand dollars of the $100,000 mortgage bonds and $250,000 of the $300,000 of the capital stock have not, to complainant's knowledge, been issued to Schaffer, but are withheld by the officers of the corporation for the purpose of defrauding complainant of his share of the profits. Schaffer and Mordaunt refuse to pay any money to complainant. Complainant knows not the amount of profits made, but avers that, on a true settlement, a large amount is due him. The prayer is for an accounting between Schaffer and Mordaunt, and an ascertainment of the amount due complainant, and for general relief.

Schaffer, in his answer, denies the alleged agreement of January 3, 1898, or that he ever contemplated or agreed that complainant should share in the profits; denies any indebtedness to Mordaunt; avers that he is an utter stranger to any contract between Mordaunt and complainant; denies that he was to receive from the corporation $300,000 of its capital stock and $100,000 in mortgage bonds; avers that he owned only one-half of the electric light plant, and in consideration of transferring the same to the corporation he received from the corporation stock of the par value of $50,000 and mortgage bonds of the par value of $25,000, and that he purchased from the corporation mortgage bonds of the face value of $75,000, paying therefor $62,500, which was their full value; that he has been unable to sell the same for the amount so paid; that there is no market price for the bonds and stock owned by him, and he has been unable to sell the same for ninety per cent of their par value; alleges that he refused to have anything to do with

the enterprise so long as complainant had anything to do therewith.

Town answers, in effect, that he is an utter stranger to all the matters averred in the bill.

Mordaunt admits, in his answer, agreements to share profits with complainant, substantially as alleged in the bill.

Replications were filed to the answers.

STEELE & HOLMES, attorneys for appellant.

H. H. C. MILLER and W. S. OPPENHEIM, attorneys for appellees.

MR. JUSTICE ADAMS delivered the opinion of the court.

It appears by return of the sheriff of Warren county, State of Mississippi, that he delivered to M. J. Mulvihill, secretary of the Railroad Power and Manufacturing Co., and to Samuel R. Hughes and B. W. Griffith, each a copy of notice and of the bill of complaint. A non-resident corporation can not be so served, and the service on Hughes and Griffith was not such as is authorized by section 14 of the chancery act. Therefore, none of the defendants mentioned was served by process, in contemplation of law. Schaffer is the only one of the defendants to the bill for whom an appearance has been entered or brief filed in this court, and therefore the only question to be determined is, whether the appellant can have any relief as against Schaffer. Complainant relies, and can only rely, on the alleged agreement between Schaffer and Mordaunt of February 15, 1898. That agreement, as stated in the bill, was an agreement between Schaffer and Mordaunt, and not an agreement between Schaffer and appellant. It is alleged that the agreement between Schaffer and Mordaunt was that Mordaunt, from his share of the profits, was to compensate his (Mordaunt's) associates, and appellant alleges that he was one of Mordaunt's associates in the enterprise. The very fact that Schaffer contracted, as alleged, with Mordaunt only, is evidence of his intention not to incur any responsibility, so far as Mordaunt's associates were con-

cerned. The appellant testified that, after the so-called franchise was granted, Schaffer purchased the electric light plant, and said he was ready to go ahead with the matter, and wanted to know what the position of Mordaunt and appellant was; that appellant's arrangement with Schaffer was, that the preliminary expenses were to be divided, and that appellant and his associates were to have one-fourth of the entire deal; that after the purchase by Schaffer of the electric light plant, a difference sprung up between Schaffer and appellant, and Schaffer said to appellant, " You do what you can, and you can have the electric light plant for what it cost me; " that then appellant went to New York and negotiated with various parties, and the negotiations failed, and then the Vicksburg parties wanted appellant to assign the franchises to Smith, and it was arranged between Smith, Mordaunt and appellant that if he would assign the franchises, he should receive one-sixteenth of the profits in the construction and the bonds and the stock, and he said he would not stand in the way, under that proposition, and assigned the franchises.

Murray F. Smith gives quite a different account both of the alleged original agreement and the agreement when appellant assigned the franchise. He testified that, by the original agreement, before the assignment to him of the franchises, Mordaunt, Mulvihill, Brennan and witness' firm, were to have one-fourth of the profits; that when the assignment was proposed Steele claimed about $800 on account of his expenses, of which amount Schaffer refused to pay more than one-half, and that, finally, witness agreed with appellant that if he, appellant, would assign the franchise, witness would pay his said claim within thirty days after the operation of the road commenced, and would give him an equal share of any profits which witness' firm would receive; that Schaffer was not a party to this agreement; that he, Schaffer, refused to have anything to do with the enterprise in connection with Steele, and that witness concealed from Schaffer his, witness', agreement with Steele, as he was afraid Schaffer would not construct

the road if he knew of it. Mordaunt testified that Schaffer made an arrangement with witness that witness was to have one-quarter of the profits, and witness agreed to take care of all of his associates; that Steele was one of his associates; that when Schaffer purchased the electric light plant, he asked Steele to put in an equal amount of money with him, Schaffer, which Steele said he was not prepared to do, and offered to turn over the franchise for a certain interest, which offer Schaffer declined, and said he would not go on with the matter, and told Steele he might go on with it; that Steele undertook so to do, but failed, and Schaffer said he would have nothing to do with the enterprise if Steele had any sort of connection with it, and that, after Steele assigned the franchise, Schaffer again took up the matter. Schaffer testified that he had no arrangement with any one except Mordaunt about a division of profits, and that he did not inquire or know who Mordaunt's associates were. There is no evidence that any profits from the construction or operation of the road have accrued to any one. It appears from the evidence that Mordaunt sold his interest to appellee Schaffer for $1,000.

The court was fully warranted in finding that there was no agreement between appellant and Schaffer as to any division of profits with appellant, and not only so, but that Schaffer, when a disagreement arose between him and appellant, absolutely refused to proceed any farther with the enterprise, or to have anything to do with it if appellant should be at all connected with it; and that appellant acceded to the position of Schaffer is evidenced, first, by his attempting to raise money himself to carry out the enterprise, and secondly, by his assigning the franchises to Smith, in consideration of the latter's agreement to pay his (appellant's) claim for expenses, and to share equally with him the profits to be received by Smith's firm. Mordaunt, appellant's witness, testified that appellant said, in regard to the proposed assignment to Smith, that he, appellant, would not stand in the way of the people of Vicksburg getting the road, that they had treated him

nicely, and that he was willing to sacrifice what money he had put up to help them. Mordaunt, in his cross-examination, testified that after the franchise was assigned to Smith, Schaffer took the matter up again " as a new matter." On redirect, Mordaunt undertook to explain this testimony, unsuccessfully, as we think. But even though the alleged contract between Mordaunt and Schaffer was not abandoned, or ceased to be relied on by appellant, he is not entitled to any relief as against appellee Schaffer. In 2 Lindley on Partnership, Sec. 460, the author says:

"If, therefore, a partner has agreed to share his profits with a stranger, and the latter seeks an account of those profits, he should bring his action against that one partner alone, and not make the others parties," citing cases. See also, Bates on Partnership, Sec. 167, and Moore v. Hammond, 110 Fed. Rep. 897, to the same effect.

The decree will be affirmed.